OPINION
{¶ 1} This is an appeal from a decision of the Court of Common Pleas Court of Coshocton County which decided a declaratory judgment action based upon a stipulation of facts and affidavits.
 {¶ 2} The stipulation stated:
 {¶ 3} "1. Title to certain real property consisting of 28.39 acres and being more fully described in Exhibit A, attached hereto and made a part hereof, (the `Real Property') was conveyed to Russell L. Snyder (`Snyder') and spouse, by a Warranty Deed filed of record on January 27, 1997 and recorded in Official Record Volume 11, Page 364 in the Coshocton County Recorder's Office.
 {¶ 4} "2. Title to a 1989 Fleetwood mobile home (the `Home') was conveyed to Snyder by an Ohio Certificate of Title on January 27, 1997 (the `Title').
 {¶ 5} "3. The Home was located, as of January 27, 1997, and is located as of the present date on the Real Property (the portion of the Real Property upon which the Home is Located, referred to as the `Premises').
 {¶ 6} "4. Snyder granted a mortgage on the Real Property to Apple Creek Banking Company by an Open-End Mortgage filed of record on January 27, 1997 and recorded in Official Record Volume 112, Page 366 in the Coshocton County Recorder's Office (the `Apple Creek Mortgage').
 {¶ 7} "5. Snyder granted a lien on the Home to Apple Creek Banking Company on January 31, 1997 (the `Apple Creek Lien'). The Apple Creek Lien was notated on the Title.
 {¶ 8} "6. Synder constructed a cement block wall underneath and around the perimeter of the Home on or before May 0f 1997. See the Affidavits of Russell L. Snyder and Donald Wayne Parker, attached hereto as Exhibits B and C.
 {¶ 9} "7. Coshocton County Auditor's Office (the `Auditor') appraised the Premises on or before Dec. 31, 1997 and determined that the Home had become so affixed to the Real Property as to constitute real property. See the Affidavits of Coshocton County Auditor, Dick Tompkins, and appraiser, Wes Tubbs, attached hereto as Exhibits D and E.
 {¶ 10} "8. The Coshocton County Treasurer's Office (the `Treasurer') has continuously taxed the Home as real property from tax year 1998 to the present date.
 {¶ 11} "9. Although neither the Auditor nor the Treasurer specifically notified Snyder that the Home had been converted to real property, the tax billing statements generated by the Treasurer indicate that a portion of the appraised taxable value of the Premises is attributed to `buildings'. Copies of the tax bill for the years 1998 through 2001 are attached hereto as Exhibit F (the `Tax Bills').
 {¶ 12} "10. Neither the Auditor nor the Treasurer demanded that Snyder surrender the Title.
 {¶ 13} "11. Each Tax Bill was sent by the Treasurer to Snyder and was received by Snyder.
 {¶ 14} "12. Snyder did not formally challenge the Auditor and Treasurer's treatment of the Home as Real Property at any time Prior to May 25, 2002.
 {¶ 15} "13. Snyder obtained a loan from MorEquity in August 1999 in the amount of $67200 (the `MorEquity Loan').
 {¶ 16} "14. The appraisal performed by Tonya Widder in connection with the MorEquity Loan contained the following statement. `The appraiser considered the dwelling a ranch (not a manufactured dwelling) in this report due to the dwelling being permanently affixed to a foundation and considered real estate by Coshocton County.' See the Affidavit of Tonya Widder, attached hereto as Exhibit G.
 {¶ 17} "15. The MorEquity Loan was a conventional residential mortgage loan secured by an Open-End Mortgage from Russell L. Snyder to MorEquity, Inc. recorded on August 25, 1999 in Mortgage Volume 165, Page 412 in the Coshocton County, Ohio Recorder's Office (the `MorEquity Mortgage').
 {¶ 18} "16. The MorEquity Mortgage was a lien on both the Real Property and the Home. No lien was placed by MorEquity on the Title to the Home. See the Affidavit of Jon Brown, attached hereto as Exhibit H.
 {¶ 19} "17. A portion of the proceeds from the MorEquity Loan were used to secure a release of the Apple Creek Mortgage and the Apple Creek Lien.
 {¶ 20} "18. The Apple Creek Mortgage and the Apple Creek Lien were fully released on August 27, 1999, subsequent to the treatment of the Home as Real Property by the Coshocton County Auditor.
 {¶ 21} "19. A Complaint in Foreclosure was filed by American General Finance, Inc. (as successor in interest to MorEquity) against Russell L. Snyder (`Snyder') in the Common Pleas Court of Coshocton County, Ohio, on August 6, 2001 as Case No. 01-CI-276 (the `Foreclosure Case').
 {¶ 22} "20. The Foreclosure Case pertained to the lien of the MorEquity Mortgage on the Premises.
 {¶ 23} "21. Pursuant to an Order of the Coshocton County Court of Common Pleas filed in the Foreclosure Case, the Premises was offered for sale by the Sheriff of Coshocton County on May 25, 2002 (the `Sale').
 {¶ 24} "22. Pursuant to an Order of the Coshocton County Court of Common Pleas, the Premises was appraised by Jim McCoy, Jon Hardesty and Tim Edwards. The appraisers considered the Home to be part of the Real Property.
 {¶ 25} "23. Defendant, Dale Hawkins (`Hawkins') attended the Sale and, in the belief that the Home was part of the Real Property, purchased the Premises for $58,000.00. See the Affidavit of Dale Hawkins attached hereto as Exhibit I.
 {¶ 26} "24. An Entry Confirming Sale, Ordering Deed and Distribution (the `Entry') was filed on July 30, 2002.
 {¶ 27} "25. The Deed on Decree and Order of Sale conveying title to the Real Property was delivered to Hawkins, filed of record on August 29, 2002 at 9:01 a.m. and recorded in Official Record Volume 267, Page 129, in the Coshocton County Recorder's Office.
 {¶ 28} "26. Subsequent to the date of the Sale, Synder requested a permit from the Coshocton County Auditor to remove the Home from the Real Property, but the request was denied.
 {¶ 29} "27. Snyder has occupied the Premises from the date of the Sale through the present date to the exclusion of Hawkins.
 {¶ 30} "28. The fair rental value of the Premises is $250 per month."
 ASSIGNMENTS OF ERROR {¶ 31} Six Assignments of Error are raised:
 {¶ 32} "1. Under Ohio Revised Code Section 4505.11(a), the trial court erred when it decided that the modular home was properly converted to real estate without the surrender of the certificate of title.
 {¶ 33} "2. Contrary to the record, the trial court erred when it determined that the modular home in this case had lost its character as defined under Ohio Revised Code Section 4501.01(o) and was therefore no longer a motor vehicle as defined by Ohio Revised Code Section 4505.01(a)(2) and was therefore real property.
 {¶ 34} "3. The trial court abused its discretion when it failed to require proof of compliance with Ohio revised code section 4503.06 as a prerequisite to any conversion of the certificate of title for the modular home to real property.
 {¶ 35} "4. Under Ohio Revised Code Section 4505.11(a), the trial court erred in not requiring the county auditor to have sought permission from an existing lien holder on the certificate of title for the modular home prior to conversion of the certificate of title to real estate.
 {¶ 36} "5. Under Ohio Revised Code Section 4505.11(a), the trial court erred in finding that the county auditor properly converted the certificate of title for the modular home to real estate when a valid lien existed on the certificate of title at the time of conversion.
 {¶ 37} "6. Under Ohio Revised Code Section 4505.18(d), the trial court erred in no requiring an affirmative duty on the party of the county auditor to have made a demand for the surrender of the certificate of title for the modular home prior to its conversion to real estate."
 I, II, III, IV, V AND VI {¶ 38} We shall address each of the Assignments of Error simultaneously.
 {¶ 39} The statutes referenced in the Assignments as affecting the asserted errors are R.C. 4505.11(A), R.C.4505.01(A)(2), R.C. 4503.6 and R.C. 4505.18(D).
 {¶ 40} These state:
 {¶ 41} R.C. 4505.11(A) states: "Each owner of a motor vehicle and each person mentioned as owner in the last certificate of title, when the motor vehicle is dismantled, destroyed, or changed in such manner that it loses its character as a motor vehicle, or changed in such manner that it is not the motor vehicle described in the certificate of title, shall surrender the certificate of title to that motor vehicle to a clerk of a court of common pleas, and the clerk, with the consent of any holders of any liens noted on the certificate of title, then shall enter a cancellation upon the clerk's records and shall notify the registrar of motor vehicles of the cancellation.
 {¶ 42} Upon the cancellation of a certificate of title in the manner prescribed by this section, any clerk and the registrar of motor vehicles may cancel and destroy all certificates and all memorandum certificates in that chain of title."
 {¶ 43} R.C. 4505.01(A)(2) states: "Motor vehicle includes manufactured homes, mobile homes, recreational vehicles, and trailers and semitrailers whose weight exceeds four thousand pounds."
 {¶ 44} R.C. 4503.06(1) states:
 {¶ 45} "(A) The owner of each manufactured or mobile home that has acquired situs in this state shall pay either a real property tax pursuant to Title LVII of the Revised Code or a manufactured home tax pursuant to division (C) of this section."
 {¶ 46} 4503.06(B)(1)(a) and (B)(2)(a) state:
 {¶ 47} "(B) The owner of a manufactured or mobile home shall pay real property taxes if either of the following applies:
 {¶ 48} "(1) The manufactured or mobile home acquired situs in the state or ownership in the home was transferred on or after January 1, 2000, and all of the following apply:
 {¶ 49} "(a) The home is affixed to a permanent foundation as defined in division (C)(5) of section 3781.06 of the Revised Code;"
 {¶ 50} R.C. 4503.06(B)(2)(a)(b)(c) and (d) provide:
 {¶ 51} "(2) The manufactured or mobile home acquired situs in the state or ownership in the home was transferred before January 1, 2000, and all of the following apply:
 {¶ 52} "(a) The home is affixed to a permanent foundation as defined in division (C)(5) of section 3781.06 of the Revised Code;
 {¶ 53} "(b) The home is located on land that is owned by the owner of the home;
 {¶ 54} "(c) The owner of the home has elected to have the home taxed as real property and, pursuant to section 4505.11 of the Revised Code, has surrendered the certificate of title to the auditor of the county containing the taxing district in which the home has its situs, together with proof that all taxes have been paid;
 {¶ 55} "(d) The county auditor has placed the home on the real property tax list and delivered the certificate of title to the clerk of the court of common pleas that issued it and the clerk has inactivated the certificate."
 {¶ 56} As there is no subsection (D) to R.C. 4505.18, we presume that Appellant was referring to R.C. 4505.18(A) and (A)(4) which provide:
 {¶ 57} "A) No person shall do any of the following:
 {¶ 58} ". . . (4) Fail to surrender the certificate of title to a clerk of a court of common pleas as provided in this chapter in case of the destruction or dismantling or change of a motor vehicle in such respect that it is not the motor vehicle described in the certificate of title;"
 {¶ 59} Assignment Number 3, in addition to R.C. 4503.06 urges this Court to find an abuse of discretion.
 {¶ 60} In order to find an abuse of discretion, we must determine the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 61} Each of the Assignments of Error and the appropriate statutes are applicable to the conversion of a mobile or modular home to real estate for purposes of taxation as such rather than being subject to taxation as personal property in addition to the real property tax.
 {¶ 62} The Ohio Attorney General's opinion, 1993 WL 590429, (Ohio A.G.) also relates to this issue and the surrendering of the title upon conversion. The other opinion 1991WL57655 (Ohio A.G.) is unrelated.
 {¶ 63} There is no doubt that the statutory procedures were not specifically followed when the auditor appraised such mobile home as affixed to the real estate and began taxing it along with Appellant's land as realty.
 {¶ 64} Appellant did not question his tax bills nor did he surrender his title nor was a demand made for such certificate of title.
 {¶ 65} However, upon obtaining his refinancing mortgage with MorEquity, Inc., predecessor to American General Finance Co., the mobile residence was not listed as separate personal property on the documents he executed although this 1987 Firebird and furniture were so listed. Also, the mortgage describing the premises subject thereto required hazard insurance, which would not have been required for a mortgage on vacant land
 {¶ 66} According to the affidavit of Jon Brown, the residence was appraised as part of the real estate and included in the mortgage. The foreclosure sale included both. It has been stipulated that the foreclosure proceedings were proper. Also, it has been stipulated that a MorEquity held a mortgage on the residence and real estate and that no separate lien was shown on the title even though such was the case, when Appellant obtained the prior loan being refinanced.
 {¶ 67} As Appellant has agreed that such foreclosure was legally correct, he cannot now attempt to collaterally attack such judgment and sale proceedings by utilization of the statutes which relate to appropriate taxation.
 {¶ 68} The doctrine of res judicata prohibits such an action. As stated in Grava v. Parkman Township, 73 Ohio St.3d 379,1995 Ohio 331, 653 N.E.2d 226, syllabus:
 {¶ 69} A valid, final judgment rendered on the merits bars all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action. Clinton Township Board of Trustees vs. ThomasYackee, Sept. 30, 2003, Ohio App. 6 Dist. and In ReGuardianship of Titington (O.P. 1958), 162 N.E.2d 628.
 {¶ 70} We, therefore, reject each of the six Assignments of Error and further find no abuse of discretion as asserted in the Third Assignment.
 {¶ 71} This cause is affirmed.
Gwin, P.J. and Wise, J., concur.